JULIEN SWANSON (SBN 193957)
AUSTIN LAW GROUP
584 Castro Street #2126
San Francisco, California 94114
Tel: (415) 282.4511
Fax: (415) 282.4536
swanson@austinlawgroup.com

Attorney for Plaintiff JILLIAN JENKINS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JILLIAN JENKINS, an individual;<br><br>    Plaintiff,<br><br>    v.<br><br>THE PERMANENTE MEDICAL GROUP Inc., ALEJANDRO CASTILLO-TERRIQUEZ, an individual, and DOES 1-100<br><br>    Defendants. | Case No. 3:22-cv-2824<br><br>**PLAINTIFF'S COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION WITH  ASSOCIATED STATE CLAIMS; DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.      This action stems from the disparate and illegal treatment suffered by the Plaintiff, Ms JILLIAN JENKINS, at the hands of the defendant, THE PERMANENTE MEDICAL GROUP Inc., ("Kaiser") and her supervisors, the individually named defendants.

2.      The case arises under Title VII of the Civil Rights Act of 1964, and related California state protections.

3.      Ms. Jenkins made numerous written and oral complaints to Kaiser and to her direct supervisors, regarding the sex-based and/or race based harassment and discrimination and the hostile work environment that resulted.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v. Kaiser et al.,* Case No. 3:22-cv-2824
Page 1

4. Defendant not only failed to investigate Ms. Jenkins' complaints meaningfully, it failed to take prompt and effective action to stop the underlying harassment and discrimination.

5. Instead, Kaiser retaliated against Ms. Jenkins for making those complaints, and simply removed her from her work assignment and reassigned her to another building with less opportunity and without orientation, switching her with another Medical Assistant from another unit - subjecting her to the hostility of those persons that she inadvertently displaced from their positions and the relationships that were interrupted.

6. As a result of the unlawful treatment by Defendant, Ms. Jenkins suffered extreme distress and trauma, and was forced to reduce her working schedule down to 32 hours per week, and ultimately left the Kaiser location that was riddled with issues and relocated to another campus, where she is no longer subject to the harassment and hostile work environment, and she is able to perform her work duties.

7. Plaintiff seeks both injunctive relief and monetary damages, including general and special damages, punitive damages, costs and attorney's fees, for the intentional violation of her civil rights and the wrongs as described herein.

## PARTIES

8. Plaintiff, JILLIAN JENKINS, ("JENKINS" or "PLAINTIFF") is, and at all times mentioned herein was an individual over the age of 18, and was residing in the State of California in the County of Alameda.

9. THE PERMANENTE MEDICAL GROUP is a California Stock Corporation, with a principal and mailing address at 1950 Franklin Street 20th Floor Oakland, CA 94612 ("Kaiser").

10. Defendant KAISER has continuously been doing business in the state of California, and has continuously employed at least fifteen (15) employees, at all times relevant to this matter.

11. At all relevant times, Defendant KAISER has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b)(f) (g) and (h).

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 2

12. It is alleged on information and belief that ALEJANDRO CASTILLO-TERRIQUEZ, MS-HCA ("Mr. CASTILLO-TERRIQUEZ") is, and at all times mentioned herein was an individual over the age of 18, and was residing in the State of California in the County of Alameda. At all times herein, CASTILLO-TERRIQUEZ was a supervisor with KAISER, and in January of 2021, supervised the PLAINTIFF, Ms. JENKINS.

13. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100 inclusive, and therefore sues these defendants by such fictitious names. The plaintiff is informed, believes and thereupon alleges that the Defendants designated herein as DOES 1 through 100, inclusive, are any one of the following:

(a) Parties responsible in some manner for the events and happenings herein referred to that caused injuries and damages proximately thereby to the Plaintiff as herein alleged;

(b) Parties that are the agents, servants, employees and/or contractors of the Defendants, each or any of them acting within the course and scope of their agency, employment, or contract;

(c) Parties that own, lease, manage, operate, secure and/or are responsible for the premises referred to hereinafter, and/or

(d) Parties that have assumed or retained the liabilities of any of the Defendant(s) by virtue of an agreement, sale, transfer or otherwise.

14. Plaintiff will amend this complaint to allege their true names and capacities, and the charging allegations, when such are ascertained.

## JURISDICTION AND VENUE

15. This Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because the action is based on Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 (42 U.S.C. § 2000e et seq.) and pursuant to 28 U.S.C. § 1337 because the action is based on a federal statute regulating commerce.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v. Kaiser et al.*, Case No. 3:22-cv-2824
Page 3

16. Plaintiffs' state law claims are so related to those under which this Court has original jurisdiction that they form part of the same case and controversy. Supplemental jurisdiction is therefore appropriate over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367.

17. Defendant Kaiser is an "employer" engaged in an industry affecting commerce as defined by 42 U.S.C. § 2000e(b).

18. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 in that Defendant owns and operates a medical facility in this judicial district, it conducts business in this judicial district, and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## PROCEDURAL HISTORY

19. Ms. Jenkins filed a charge of discrimination with the EEOC alleging violations of Title VII, including discrimination based on sex and race, hostile work environment, and retaliation by Defendant, on or about April 8, 2021 (EEOC Charge No. 555-2021-00542C).

20. A DFEH Notice of Right to Sue in the state of California issued that same date.

21. The EEOC provided Defendant with notice of the above charge of discrimination and retaliation and the Defendant denied wrongdoing.

22. On February 14, 2022, at Ms. Jenkins request, the EEOC dismissed the charge and issued a Notice of Right to Sue letter in this case.

23. Ms. Jenkins has properly exhausted her administrative remedies and fulfilled all conditions precedent to the commencement of this lawsuit.

## GENERAL ALLEGATIONS OF FACT

24. The Plaintiff, Jillian Jenkins, is an African American and Jewish woman.

25. Ms. Jenkins graduated from the College of Marin Medical Assisting Program in 2015 and has since worked professionally as a medical assistant at various Kaiser facilities in the Bay Area.

26. On July 06, 2015, she was hired to work in Kaiser's San Rafael Adult Medicine Department as a Medical Assistant, for a full time 40-hour position, and in September of 2018, she

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 4

transferred to Kaiser Oakland Obstetrics & Gynecology Department as a Medical Assistant, and remained there through December 2019.

27. On January 04, 2021, in part because of COVID related logistics, Ms. Jenkins transferred to Kaiser Pleasanton Family Medicine, under the supervision of Alejandro Castillo-Terriquez.

28. The position was located in Building 1, with Pediatric, Gynecology and Adult Medicine units, so offered great opportunity for her training and career advancement.

### January 14, 2021 – The Harrassment

29. On Thursday, January 14, 2021, only ten days into her new position, Ms. Jenkins was filling out a Time Correction Sheet outside of Mr. Castillo-Terriquez' office door.

30. Without prompting or related conversation, Ms. Jenkins was asked by Castillo-Terriquez "*What are you mixed with*?"

31. She was unnerved and shocked. Feeling like she had no choice but to reply, she stated "*I'm African American and Jewish*."

32. He then asked her "*what do your parents look like*."

33. Again she was taken aback, unsure how to exit the situation without confrontation, so she described her mother as white with red curly hair, and tried to move on.

34. She was then confronted with his comments about her fertility and procreation when he informed her that her children "*could be redheads*."

35. He then asked her how "*dark*" her father was.

36. She was humiliated and embarrassed, and unable to control the conversation, so she told him that her father was "*darker skinned*."

37. Mr. Castillo-Terriquez, her new supervisor, then commented on her physical attributes, concluding this was why her hair was so curly.

38. On her first opportunity to escape, she left the situation feeling exposed, objectified, violated, humiliated and embarrassed.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 5

**Related Kaiser Policy on Harassment**

39. Kaiser Permanente's, Principles of Responsibility Section 7: Treat One Another with Dignity and Respect: Subsection 7.2 categorizes a violation as follows: "*(...) inappropriate comments about a person's race, color, sex, gender identity, age, religion, national origin, ancestry, citizenship, physical or mental disability, veteran status, genetic information, or other status protected by federal, state or local laws.*"

40. Subsection 7.4 continues: "*Kaiser Permanente prohibits intimidation or retaliation of any kind against individuals who in good faith report or participate in the investigation of any compliance concern.*"

**01/27/2021: Jenkins' email to her Union Representative**

41. Ms. Jenkins tried to move on from the incident, but she could not forget what had happened and continued to feel violated.

42. On January 27, 2021, Ms. Jenkins notified her union representatives, Asa Bowman, Margaret Williams and Margaret Cohen, about the incident via email.

43. On January 29, 2021, at 1:35 pm, Ms. Jenkins emailed Mr. Castillo-Terriquez directly, to inform him that the conversation about race and child bearing that occurred 14 days prior was inappropriate and hurtful, and she requested that he talk to her about work only, and not "*comment on what I am wearing, or comment on me sitting rather than standing. It feels like harassment on a certain level, like you're always watching every detail down to the threa[d] in my jacket.*"

44. After sending the email, Ms. Jenkins was informed by him through a TEAMs chat that their supervisory meeting was cancelled, and would be rescheduled when another manager could be present "*with him.*"

45. He responded to her email in writing at 2:48 pm on January 29th, that same day, that he would forward her concerns to human resources and his director, Robin Duncan. He made no apology, and instead denied that "*any of our conversations have contained what you have described…*" and stated he was *"... concerned that you feel this way."*

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 6

46. Within 30 minutes of the response email, she received an edited staffing calendar that indicated that she was being moved to another position and location.

47. On the advice of her union representative, she called the Corporate Compliance hotline, but was turned away and told that they did not handle workplace environment issues so would not be acting in response to her complaint.

48. Ultimately, the only response she received from her complaint was retaliation.

### Adverse Employment Action – Transfer and Loss of Training and Work Opportunity

49. On January 29, 2021 at 3:15 pm, Ms. Jenkins was informed through a calendar chat that she was being transferred from her current work assignment, in the North Building, to a new location and department in the South Building, to which she was not familiar and to which she had never been oriented.

50. As a result of this transfer, her on-boarding and training meetings were all cancelled and she would be working in only Adult Medicine, as the South Building did not have either Pediatrics or Gynecology, thus eliminating the opportunity for her to be trained and to work in either the Pediatric and Gynecology units.

51. Moreover, instead of being trained with Lead Medical Assistant Jenna Rae Green in Family Medicine or finishing her orientation in her current employment setting, she was reassigned, to an entire new staff and building.

52. She was simply switched out for another medical assistant, Bindu Mehta - the only change that was made that day.

53. She was assigned a new supervisor, Arvil Fernandez, who told her that he was not responsible for the change in her work assignment and location, and when she asked him to whom she could speak regarding her treatment at Kaiser Pleasanton, he said he knew of nobody.

54. On February 1, 2021, her first day in the South Building of Pleasanton Adult Medicine, she had to ask the receptionist (that she did not know), where she was supposed to go to report to work, as she had never been oriented to that building.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 7

55. It is common practice at Kaiser Pleasanton to have to "float" from Adult Medicine to Family Medicine due to routine low staffing.  However, because Ms. Jenkins' training in Family Medicine was interrupted on her transfer, she was not trained in necessary procedures, including ear lavage, pediatric hearing testing, infant measurements, etc., that she had been scheduled to receive prior to the transfer, and as a result of missing this training, she was not able to act as a float to the Family Medicine Department - a lost opportunity for her.

56. Neither Mr. Castillo-Terriquez nor Arvil, her supervisors, signed off on the department orientation packet within the 30-day period, and neither met with her after she made her complaints to sign off on her packet, so again she was subject to retaliation and adverse ramifications, as a result of her making complaints about the illegal treatment.

57. Moreover, Ms. Jenkins was originally partnered with physician, Ana Amog MD in the Family Medicine Department.

58. After she was abruptly moved, Mr. Amog expressed her discontent with Ms. Jenkins during a confrontation about her having moved without warning.  Mr. Amog informed Jenkins that management had informed her that Ms. Jenkins was moved because she required "further training" making it appear as though Ms. Jenkins had done something wrong, and required intervention as a result.

59. This was an embarrassing interruption in her career and professional relationships.

60. Ms. Jenkins was never told any reason for the move.

61. Indeed, it appeared that the move was a form of discipline or was in response to her being inadequately trained.

62. Bindu Mehta, the medical assistant that was switched with Ms. Jenkins, had previously been partnered with a medical provider named Mr. Patel in the South Building for many years.  On February 2, 2021, when she was abruptly removed and switched with Ms. Jenkins to another building and doctor, she was understandably upset.

63. Unfortunately, she blamed Jenkins for the interruption in her career and professional relationships, as there was never an explanation made as to why the switch was made, and it was assumed to be a result of something Ms. Jenkins had done wrong.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 8

64. Like Mr. Amog, she expressed her confusion and frustration about the switch to Ms. Jenkins and Ms. Jenkins was blamed for the events.

65. Bindu thereafter, was hostile toward Ms. Jenkins and regularly accused her of stealing her partnered physician. Although management stated the move was temporary, the transfer caused a rift between Ms. Jenkins and her colleagues and staff, making it impossible for them to work together without friction and hostility.

66. On March 14, 2021, as a direct result of the difficulties at her workplace, and to protect her mental health and wellbeing, Ms. Jenkins reduced her time to 32-hour per week, decreasing her monthly working hours by 24 hours and her pay by $1000 per month.

67. Her direct report, Arvil Fernandez, repeatedly declined to address her concerns about Mr. Castillo-Terriquez and did not offer any help or resources to resolve this issue.

68. On March 24, 2021, Mehta was requested by Arvil Fernandez to clear out her items from her desk and cubby at her former workstation, at which point she approached my client and stated "*Why did you take my doctor?*"

69. Again, Ms. Jenkins was the recipient of hostility and frustration as a result of comments that were made to her, and the complaints she made about them.

70. She was finally able to transfer out of this facility altogether in December 2021 – and has had no problems since that time.

### Kaiser's Complaint and Retaliation Policy

71. The Permanente Medical Group's lack of response to Ms. Jenkins' grievances is in direct violation of Kaiser's internal policies, including, Kaiser Permanente's, Human Resources Policy: Equal Employment Opportunity Internal Complaint Procedure provides as follows:

> Section 5.2: "No Retaliation, "Any employee filing or participating in the investigation of an EEO complaint should not be subject to any form of adverse action including, but not limited to, intimidation, reprisal or retaliation because of her/his EEO complaint or participation."
>
> Section 5.3.2: "Investigation of the Complaint "Within five business days of the complaint reporting an alleged EEO violation to the local HR representative, the employee will be

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 9

*contacted by the HR Representative or the designated investigator assigned to the case to conduct an interview."*

*Section 5.3.3: "The HR Representative will respond to a current employee in writing as to the outcome of KP's investigation within 90 calendar days of the date of the HR Representatives initial meeting with the employee, or as soon thereafter as practicable."*

72. Moreover, Kaiser claimed to the EEOC in defense of itself and its management, that a meeting took place on January 7 2021, where the inappropriate comments were addressed by Ms. Duncan, Ms. O'Guinn and Ms. Jenkins' union representatives.   This is neither accurate nor possible, as this meeting predates the January 14 the incident by seven (7) days.

73. Kaiser's EEOC allegations undermining Ms. Jenkins described multiple meetings between the Parties following the alleged January 7 meeting, implying that (i) Ms. Jenkins was participating in racially tinged and offensive comments as though the Parties were engaged in an ongoing, playful banter, and (ii) that she admitted to using another person's credentials to access the system by stating that she likes to be "facetious."

74. Both implications are inaccurate.

75. Kaiser's evidence in support of its position was that Chio Saetern, a medical assistant, witnessed a conversation between the Parties on January 22, 2021, inside Mr. Castillo-Terriquez' office, as proof that the conversation did not happen.  However, the date of this witness' account is eight (8) days after the comments were made and describes a conversation that occurred *inside* his office.   This witness did not allege to have witnessed the incident in question on the date in question.

76. As for the claim that Ms. Jenkins used another employee's log in credentials, this is defamatory and false.  Medical assistant Tammy Hoang, who Ms. Jenkins was seated next to when she was placed with Mr. Amog, helped her book patient appointments as a result of Mr. Castillo-Terriquez' failure to provide her with schedule system log-on credentials before starting her with a physician.  Ms. Hoang was herself, scheduling patients on Ms. Jenkins' behalf - Ms. Jenkins did not use her log-in credentials at all.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 10

**CLAIM ONE**
**Title VII**
**42 U.S.C. § 2000e, et seq.**
**Hostile Work Environment and Retaliation**
**Against All Defendants**

77. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated in full.

78. Jenkins seeks damages against the Defendants for a discriminatory hostile work environment based on sex and race during a time period in which she was employed by Kaiser.

79. In January of 2021, Ms. Jenkins was subjected to multiple race and sex specific comments by her direct supervisor, Alejandro Castillo-Terriquez.

80. These comments were offensive to her and would be offensive to any reasonable woman.

81. As a result of these comments, and the impact they had on her, she made a written complaint to her supervisor and her union representatives, as well as the EEOC.

82. Kaiser did not address the problem and instead transferred her to another building and another supervisor.

83. In so doing, Kaiser switched her position with another medical assistant, without explanation, subjecting Ms. Jenkins to further hostility as a result. Ms. Jenkins was blamed for the disruption and her daily work life was incredibly difficult and filled with conflict as a result.

84. The hostile work environment was severe and pervasive, as alleged above.

85. Ms. Jenkins perceived the working environment to be hostile as a result of the comments, her complaints about the comments, and her transfer. A reasonable person in Ms. Jenkins circumstances would consider the working environment to be hostile.

86. Defendant's actions occurred because of Ms. Jenkins sex and race, and Ms. Jenkins was the object of Defendant's retaliation and harassment by reason of her race and sex, and her complaints about the discrimination related to her supervisor's comments.

87. Defendant was on notice of the hostile work environment, including actual notice by means of complaints made by Ms. Jenkins.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 11

88. Defendant did not undertake prompt and effective actions sufficient to stop the discrimination and harassment or the hostile work environment detailed herein, or to prevent future discrimination and harassment.

89. Instead, Kaiser made false allegations in its defense to the EEOC in an attempt to undermine her credibility and subject her to negative consequences.

90. As a direct and proximate result of Defendant's illegal harassment, discrimination and retaliation, Ms. Jenkins suffered humiliation and embarrassment, loss of income, loss of enjoyment of life, emotional distress, damage to her professional reputation, and other pecuniary and non-pecuniary losses.

## CLAIM TWO
**Fair Employment and Housing Act**
**Gov't Code § 12940(j)**
**Hostile Work Environment and Retaliation**
**Against All Defendants**

91. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated in full.

92. As identified herein, Jenkins was an employee of Defendant Kaiser.

93. Jenkins was subjected to unwanted harassing conduct based on her race and her sex.

94. She was then subject to retaliation and further hostility because she made complaints about the unwelcome and harassing conduct.

95. The harassing conduct of Defendant Kaiser and it agents was serve and pervasive.

96. A reasonable transgender person in Jenkins' circumstances would have considered the work environment to be hostile and retaliatory.

97. Ms. Jenkins considered the work environment to be hostile and retaliatory.

98. Supervisors engaged in the unlawful conduct, and Defendant Kaiser knew and should have known of the conduct but failed to take immediate and appropriate corrective action.

99. Defendant is strictly liable for its supervisor's actions. (Myers v. Trendwest Resorts, Inc. (2007)148 Cal.App.4th 1403, 1421 [56 Cal.Rptr.3d 501].)

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 12

100. That Defendant Kaiser through its officers, directors, managers and supervisors created or knowingly permitted working conditions to exist that were so intolerable that a reasonable person in Jenkins' position would have had no reasonable alternative except to reduce her working hours and to seek a transfer of her employment to another Kaiser campus.

101. The harassment was sufficiently severe and pervasive to alter the conditions of Jenkins' employment, and as a result, she suffered severe emotional distress and trauma, and was deprived of her employment opportunities, and the associated employment training, and the full time wage as a result.

102. Kaiser's egregious conduct was a substantial factor in causing Jenkins' harm.

### CLAIM THREE
### Violations of Labor Code § 1102.5, et seq.
### Against KAISER

103. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated in full.

104. At all relevant times, Labor Code section 1102.5 was in effect and was binding on Defendant. This statute prohibits Defendant from retaliating against any employee, including Plaintiff, for raising complaints of illegality.

105. Plaintiff raised complaints of illegality while she worked for Defendants, including filing a complaint with the EEOC and emailing her direct supervisor.

106. As a proximate result of Defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum according to proof.

107. As a result of defendants' adverse employment actions against her, she has suffered general and special damages in sums according to proof.

108. Defendants' misconduct was committed intentionally, in a malicious, oppressive manner, entitling plaintiff to punitive damages against defendants.

109. WHEREFORE Plaintiff prays for judgment as set forth below.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 13

**CLAIM FOUR**
**Failure to Prevent Harassment/Retaliation**
**Against Defendant KAISER**

110. Plaintiff incorporates herein by this reference the allegations contained in above paragraphs as if stated in full.

111. MRS. JENKINS was subjected to harassment and discrimination in the course of her employment with Defendants, yet Defendants failed to take all reasonable steps to prevent the harassment and discrimination.

112. At all times herein mentioned, Government Code §§ 12940, including subsection (k), were in full force and effect and were binding on all Defendants. These subsections require Defendants to take all reasonable steps necessary to prevent harassment and retaliation from occurring. As alleged above, Defendants violated these subsections by failing to take all reasonable steps necessary to prevent harassment and retaliation from occurring.

113. Plaintiff is informed and believes, and thereupon alleges that KAISER knew of MR. CASTILLO-TERRIQUEZ's propensity for engaging in unlawful, harassing and discriminatory conduct in the workplace and that he should not have been employed by Defendants and/or he should have been reprimanded and/or relieved of his supervisory duties.

114. Each and every Defendant should have restrained its employees from engaging in unlawful, discriminatory conduct and should have provided training and instruction to its employees on the laws pertaining to harassment and discrimination.

115. Under Cal. Gov't Code § 815.2, Defendant KAISER is similarly liable for the negligent and tortuous actions of MR. CASTILLO-TERRIQUEZ.

116. KAISER's administrative and supervisory personnel who were aware or should have been aware of the ongoing harassment and discrimination suffered by MRS. JENKINS failed to adequately execute policies and procedures against such behaviors in this case.

117. Plaintiff is informed and believes, and thereupon alleges, U.C. REGENTS and its agents had advance knowledge of the unfitness of their employee, MR. CASTILLO-TERRIQUEZ, yet continued to employ him, and ratified the harassing, discriminatory, outrageous, and malicious conduct as set forth above after managing agents were given notice of such conduct.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v. Kaiser et al.,* Case No. 3:22-cv-2824
Page 14

118. Plaintiff is informed and believes, and thereupon alleges, that Defendants failed to provide adequate training to their supervisors, managers, and other employees.

119. As a direct and proximate result of the unlawful harassment of Plaintiff described above, Plaintiff has suffered, and continues to suffer special damages, including but not limited to losses in earnings, bonuses, deferred compensation, employment benefits, earning capacity, opportunities for employment advancement and work experience, and other damages to be proven at the time of trial.

120. As a direct and proximate result of the unlawful conduct of Defendants, and each of them, Plaintiff has suffered, and continues to suffer, general damages, including but not limited to shock, embarrassment, physical distress and injury, humiliation, emotional distress stress, and other damages to be proven at the time of trial.

121. As a direct cause of the acts alleged above, Plaintiff has had to hire the services of an attorney. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees, and is entitled to an award of attorneys' fees and costs pursuant to Government Code § 12965(b).

122. Plaintiff is presently unaware of the precise amount of these expenses and fees, and prays leave of Court to amend this Complaint when the amounts are more fully known.

123. As a result of Defendants' willful, knowing, and intentional harassment of Plaintiff, Plaintiff seeks an award of punitive and exemplary damages to the maximum extent allowed by law, and in an amount according to proof.

124. WHEREFORE Plaintiff prays for judgment as set forth below.

**MANDATORY RECOVERY OF ATTORNEY FEES AND COSTS**

125. Plaintiff incorporates by reference all previous paragraphs as if fully set forth herein.

126. Plaintiff has a mandatory entitlement to recover attorney fees and costs pursuant to provisions of Title VII.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v.Kaiser et al.,* Case No. 3:22-cv-2824
Page 15

**WHEREFORE PLAINTIFF PRAYS FOR RELIEF AS FOLLOWS:**

1. Enter a declaratory judgment that the Defendant's conduct as complained of in this complaint violates Ms. Jenkins' rights under Title VII and California law;

2. Permanently enjoin Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them from engaging in the illegal conduct of discriminating against employees;

3. Order Defendant to institute and carry out policies, practices, programs, and training which provide equal employment opportunities for all employees regardless of race, sex and religion, and which eradicate the effects of Defendant's past and present illegal employment practices;

4. Order other affirmative relief necessary to eradicate the effects of Defendant's illegal employment practices;

5. Direct Defendant to pay Ms. Jenkins her past and future pecuniary losses resulting from the illegal conduct and practices complained of herein, including back pay and front pay;

6. Direct Defendant to pay Ms. Jenkins for her past and future non-pecuniary losses resulting from the illegal conduct and practices complained of herein, including humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, and other compensatory damages, in an amount to be determined at trial;

7. Direct Defendant to pay Ms. Jenkins punitive and exemplary damages for its malicious or reckless conduct complained of herein, in an amount to be determined at trial;

8. Award Ms. Jenkins the costs of suit incurred herein, including attorney's fees; and

9. For such other and further relief as the court may deem proper.

10.

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v. Kaiser et al.,* Case No. 3:22-cv-2824
Page 16

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

DATED: May 12, 2022                    Respectfully submitted,

                                                   AUSTIN LAW GROUP


By:   */s/ Julien Swanson*
      Julien Swanson, Esq.
      Attorney for Plaintiff Jenkins


## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

DATED: May 12, 2022                    Respectfully submitted,

                                                 AUSTIN LAW GROUP


By:   */s/ Julien Swanson*
      Julien Swanson, Esq.
      Attorney for Plaintiff Jenkins

Plaintiff's Complaint for Damages and Injunctive Relief
*Jenkins v. Kaiser et al.,* Case No. 3:22-cv-2824
Page 17